**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Martin, | No. CV-18-00027-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Weed Incorporated, et al., | |
| Defendants. | |

Pending before the Court are Defendant Weed, Inc.'s Motion to Dismiss (Doc. 13) and Motion to Amend (Doc. 33) and Plaintiff William Martin's Motion to Dismiss (Doc. 20). The Motions are suitable for determination without oral argument.

**I.     Standard of Review**

A complaint must include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require in-depth factual allegations, it does require more than "labels[,]" "conclusions," or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). There must be sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal under Rule 12(b)(6) may be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When reviewing a

1 motion to dismiss pursuant to Rule 12(b)(6), a court takes "all factual allegations set forth in the complaint . . . as true and construed in the light most favorable to plaintiffs." *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (internal quotation marks omitted). However, only well-pleaded facts are given a presumption of truth. *Iqbal*, 556 U.S. at 679. Conclusory allegations—that is, allegations that "simply recite the elements of a cause of action" without supplying underlying facts to support those elements—are not "entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If a complaint falls short of meeting the necessary pleading standards, a district court should dismiss with leave to amend unless the deficiencies of a pleading "could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) ("We have adopted a generous standard for granting leave to amend from a dismissal for failure to state a claim . . . ."). Failing to give leave to amend when a plaintiff could include additional facts to cure a complaint's deficiencies is an abuse of discretion. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).

**II.    Defendant's Motion to Dismiss**[1]

    **A.    First Amended Complaint**

The First Amended Complaint ("FAC") contains the following allegations pertaining to Defendant Weed, Inc. On or around October 1, 2014, Plaintiff and Defendant entered into a Consulting Agreement ("Agreement") under which Plaintiff was to be available to consult with Defendant's officers and directors on specified projects until September 30, 2015. (Doc. 29, ¶ 9.) As compensation for Plaintiff's services under the Agreement, Defendant was to issue Plaintiff 1,200,000 shares of common stock in

---

[1] Defendant's Motion targets the original Complaint, which is no longer operative. Generally, a motion to dismiss that targets an inoperative complaint is moot because an amended complaint supersedes the original, the latter being treated as nonexistent. *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Defense counsel indicated during a telephonic conference held on March 23, 2018, that he believes the Motion is not moot in this case, and Plaintiff's counsel agreed that the Motion may not be moot. Because the amendments made in the operative First Amended Complaint do not affect Defendant's statute-of-limitations arguments, the Court will construe the Motion as one to dismiss the First Amended Complaint. To require a new Motion would only needlessly delay this action.

Weed, Inc. (*Id.* ¶ 10.) The shares were to be transferred in two issuances: the first issuance of 500,000 shares within 30 days of execution of the Agreement and the second issuance of 700,000 shares within 30 days of April 1, 2015. (*Id.*) Plaintiff was issued the initial 500,000 shares. (*Id.* ¶ 11.)

Plaintiff performed consulting services under the Agreement for the full term of the Agreement. (*Id.* ¶ 12.) Despite demand made in December 2017, Defendant has failed and refused to issue Plaintiff the additional 700,000 shares of common stock. (*Id.* ¶ 14.) The shares were originally valued at $0.05 per share, but were worth $10.52 per share as of the filing of the Complaint. (*Id.* ¶ 13.) Plaintiff alleges, among other claims, claims for breach of the covenant of good faith and fair dealing and conversion.

### B. Breach of the Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff's claim for breach of the covenant of good faith and fair dealing ("bad-faith claim") is barred by the statute of limitations. As a threshold matter, the parties dispute whether a 2-year or 6-year limitations period applies. Defendant cites an Arizona case in which a 2-year limitations period was applied to a bad-faith claim arising out of an insurance contract. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 893 P.2d 39 (Ariz. Ct. App. 1994), *vacated on other grounds*, 913 P.2d 1092 (Ariz. 1996). Defendant concedes it found no case in which a court applied a 2-year limitations period outside the insurance context, but argues there is no reason to believe a different limitations period should apply. Plaintiff argues that his bad-faith claim sounds in contract rather than tort, and thus the 6-year limitations period for breach-of-contract claims should apply.

The Court finds that a 2-year limitations period applies. Plaintiff correctly points out that Arizona case law recognizes a distinction between bad-faith claims sounding in tort and bad-faith claims sounding in contract. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons*, 38 P.3d 12, 29 (Ariz. 2002) (en banc) (explaining that a "special relationship" between the parties is required for bad-faith claims sounding in tort, but not for bad-faith claims sounding in contract). However, Plaintiff cites no

authority showing that distinction bears on the statute of limitations. The few cases available all apply a 2-year limitations period regardless of the context. *See Taylor*, 913 P.2d at 1094 (applying 2-year limitations period to bad-faith claim arising out of insurance contract); *Serrano v. Serrano*, No. 1 CA–CV 10–0649, 2012 WL 75639, at *6 (Ariz. Ct. App. Jan. 10, 2012) (applying 2-year limitations period to bad-faith claim arising out of partnership agreement to operate a restaurant); *Stockwell v. Myers*, No. CV-13-00782-PHX-ROS, 2014 WL 12729574, at *1–3 (D. Ariz. Mar. 24, 2014) (applying 2-year limitations period to bad-faith claim arising out of business venture to buy and sell real estate).

Defendant contends that Plaintiff's bad-faith claim accrued in September 2015 at the latest, when the Agreement would have terminated pursuant to its terms. Plaintiff disagrees, arguing that he did not discover his claim until December 2017, when his demand for the shares was refused. Taking the FAC's allegations as true and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff's bad-faith claim accrued in September 2015 at the latest and that it is barred by the statute of limitations.

The discovery rule—under which a claim "does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the [claim]"—applies to contract claims. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995) (en banc). Simply stated, neither Plaintiff's alleged injury nor its cause was difficult to detect. Plaintiff asserts entitlement to 700,000 shares of stock that, pursuant to the Agreement, were payable *no later than* May 1, 2015. A reasonable person would have discovered the facts underlying the claim (i.e., that Defendant was refusing to transfer the shares) when he or she did not receive the shares by that deadline. *Cf. HSL Linda Gardens Properties, Ltd. v. Freeman*, 859 P.2d 1339, 1340–41 (Ariz. Ct. App. 1993) (applying discovery rule where plaintiff had no reason to know of defendant's breach of land-purchase contract until plaintiff tried to sell the land 7 years later). Assuming for the sake of argument that a reasonable person would not

have discovered the claim by non-receipt of the shares, non-receipt by the deadline would have prompted a reasonable person to diligently investigate, and even the most cursory investigation would have revealed the facts underlying the claim. Giving Plaintiff the benefit that waiting until September 2015 to investigate was reasonable, his claim must fail. Plaintiff waited more than 2 years after the termination date to make inquiries, which is objectively unreasonable.

Therefore, Plaintiff's claim accrued in September 2015 at the latest, when the Agreement would have terminated on its own and a reasonable person would have discovered the facts underlying the claim. Under the 2-year limitations period applicable to his bad-faith claim, Plaintiff was required to file suit no later than September 2017. Plaintiff filed suit on January 19, 2018; it is therefore apparent from the face of the FAC that his claim is barred. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." (citations omitted)). Because the statute of limitations is absolute, amendment would be futile. *See Deutsch v. Turner Corp.*, 324 F.3d 692, 718 n.20 (9th Cir. 2003) (amendment is futile if the claim will be barred by the statute of limitations). Consequently, the bad-faith claim will be dismissed with prejudice.

**C.  Conversion**

Defendant argues that Plaintiff's conversion claim is barred under the 2-year statute of limitations. *See Tissicino v. Peterson*, 121 P.3d 1286, 1290 (Ariz. Ct. App. 2005) (citing Ariz. Rev. Stat. § 12-542(5)) (setting forth the statute of limitations). Defendant contends that Plaintiff's conversion claim accrued in September 2015 at the latest, when the Agreement would have terminated on its own, and that the claim is untimely because the Complaint was filed more than two years later. Plaintiff responds that his claim is saved by the discovery rule. Plaintiff further contends that Defendant's retention of the stock is a continuing tort that has not yet fully accrued. *See Floyd v. Donahue*, 923 P.2d 875, 879 (Ariz. Ct. App. 1996) (describing the continuous tort

doctrine).

Taking the FAC's allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff's conversion claim is barred by the statute of limitations. The discovery rule does not save Plaintiff's claim. As explained above, a reasonable person would have discovered the facts underlying the claim no later than September 2015; under no reasonable interpretation of the facts could a jury conclude otherwise. Nor does the continuing tort doctrine save Plaintiff's claim. The continuing tort doctrine applies to tort claims "based on a series of related wrongful acts." *Cruz v. City of Tucson*, 401 P.3d 1018, 1023 (Ariz. Ct. App. 2017) (citing *Watkins v. Arpaio*, 367 P.3d 72, 75 (Ariz. Ct. App. 2016)). It does not apply here, where the claim is predicated on a single act that took place in 2015.

It is apparent from the face of the FAC that Plaintiff filed suit more than 2 years after his claim accrued. Therefore, Defendant's Motion will be granted with respect to Plaintiff's conversion claim. The conversion claim will be dismissed with prejudice because amendment would be futile. *See Deutsch*, 324 F.3d at 718 n.20.

### III. Plaintiff's Motion to Dismiss[2]

#### A. Amended Counterclaim[3]

Defendant's Amended Counterclaim contains the following allegations. In October 2014, Plaintiff represented to Defendant that Michael Ryan was interested in becoming a consultant for Defendant and that Ryan had the skills and abilities to provide valuable consulting services. (Doc. 30 at 6, ¶¶ 8, 9.) In October 2014, Plaintiff encouraged and persuaded Defendant to retain Ryan as a consultant. (*Id.* ¶¶ 10, 11.) In reliance on Plaintiff's representations that Ryan was interested in becoming a consultant and had the skills and abilities to provide valuable consulting services, Defendant offered

---

[2] Plaintiff's Motion targets the original Counterclaim, which is now inoperative. However, the Amended Counterclaim added the spouse of the original counter-defendant without changing any of the substantive allegations. Therefore, in the interest of avoiding unnecessary delay, the Court will construe Plaintiff's Motion as targeting the Amended Counterclaim.
[3] To avoid confusion, the Court uses the party designations associated with Plaintiff William Martin's First Amended Complaint.

to retain Ryan as a consultant. (*Id.* ¶ 12.) Plaintiff's representations concerning Ryan were material false statements of fact that Defendant reasonably relied upon by offering to retain Ryan. (*Id.* at 6–7, ¶¶ 13, 14.) Defendant would not have offered to retain Ryan had Plaintiff not misrepresented Ryan's interest or abilities. (*Id.* at 7, ¶ 15.)

Based upon Defendant's reasonable reliance on Plaintiff's material misrepresentations, Defendant executed a consulting agreement with Ryan in October 2014. (*Id.* ¶ 16.) Pursuant to the consulting agreement, Defendant compensated Ryan by issuing 50,000 shares of common stock in Weed, Inc. (*Id.* ¶¶ 18, 19.) At the time Plaintiff misrepresented Ryan's interest and abilities, Defendant did not know that Plaintiff was indebted to Ryan; that Plaintiff had intended the shares of stock to satisfy his debt to Ryan; that Plaintiff had told Ryan he would not have to provide any consulting services to Defendant; and that, when the consulting agreement was executed, Ryan did not intend to provide consulting services to Defendant. (*Id.* at 7–8, ¶¶ 20, 21, 22, 23.)

Defendant did not learn of Plaintiff's misrepresentations, concealment, and fraud until 2017. (*Id.* at 8, ¶ 24.) Despite receiving 50,000 shares of stock, Ryan did not provide any consulting services to Defendant. (*Id.* ¶ 25.) Defendant was damaged as a result of Plaintiff's misrepresentations, concealment, and fraudulent inducement to enter into the consulting agreement with Ryan. (*Id.* ¶ 26.) Based on the foregoing allegations, Defendant asserts a claim of fraud/concealment against Plaintiff.

**B.     Discussion**

**1.     Elements of Fraud**

Plaintiff argues that Defendant failed to allege the elements of fraud. Fraud requires:

> (1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; and (9) [the hearer's] consequent and proximate injury.

*KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 (Ariz. Ct. App. 2014) (alterations in original) (quoting *Neilson v. Flashberg*, 419 P.2d 514, 517–18 (Ariz. 1966)). Specifically, Plaintiff argues that (1) Defendant failed to allege Plaintiff had knowledge that his representations were false, and (2) the alleged representations are non-actionable expressions of opinion. Defendant argues that it repeatedly alleged that Plaintiff knew his affirmative representations were false and that Plaintiff overlooks certain omissions that constitute actionable fraud in the form of concealment or nondisclosure (e.g., Plaintiff was indebted to Ryan and told Ryan he would not have to provide Defendant any consulting services).

Accepting all material allegations as true and drawing all reasonable inferences in Defendant's favor, the Court finds that Defendant has adequately alleged the elements of fraudulent misrepresentation. Plaintiff allegedly told Ryan he would receive shares of stock in Weed, Inc. without having to provide any consulting services. Plaintiff allegedly told Defendant that Ryan was interested in becoming a consultant for Weed, Inc. and had the skills to provide valuable consulting services. Assuming there is evidence that Plaintiff was indebted to Ryan and told Ryan he would not have to perform, one may reasonably infer that Plaintiff knew his representations were false when made.

Plaintiff correctly points out that a fraud claim may not be based upon an expression of opinion. *See Page Inv. Co. v. Staley*, 468 P.2d 589, 591 (Ariz. 1970). Viewed in isolation, Plaintiff's representations that Ryan "was interested in becoming a consultant" and "had the skills and abilities to provide valuable consulting services" could be interpreted as statements of opinion. However, "magic language is not necessary in pleading fraud, as long as the pleading, considered as a whole, can be construed to plead the nine elements." *Hall v. Romero*, 685 P.2d 757, 761 (Ariz. Ct. App. 1984) (citing *Spudnuts, Inc. v. Lane*, 641 P.2d 912, 914 (Ariz. Ct. App. 1982)). Plaintiff allegedly "encouraged" and "persuaded" Defendant to retain Ryan as a consultant, all while intending that Ryan not provide any consulting services. Viewing the pleading as a whole, Plaintiff's alleged statements go beyond mere expressions of opinion. They are

more akin to "statements concerning future events . . . [that] were made with the present intention not to perform," which can constitute actionable fraud. *Staheli v. Kauffman*, 595 P.2d 172, 175 (Ariz. 1979).

Defendant argues that it has also adequately alleged fraud in the form of nondisclosure. Nondisclosure constitutes actionable fraud only if the party failing to disclose owes a duty to speak. *Wells Fargo Bank*, 38 P.3d at 35–36. Defendant suggests that Plaintiff's status as a shareholder in Weed, Inc. created a duty to disclose as a matter of law. However, only majority shareholders owe a fiduciary duty to act fairly to the owned company. *Pioneer Annuity Life Ins. Co. ex rel. Childers v. Nat'l Equity Life Ins. Co.*, 765 P.2d 550, 555 (Ariz. Ct. App. 1988); *see Wash. Nat'l Tr. Co. v. W. M. Dary Co.*, 568 P.2d 1069, 1072 (Ariz. 1977). There are no allegations that Plaintiff was a majority shareholder.

Defendant also suggests that the Agreement created a duty to disclose. However, the Court must limit its review to facts alleged in the complaint, to the contents of documents attached to the complaint, and to documents incorporated by reference in the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989)). Defendant does not allege any facts relating to the Agreement, nor did Defendant attach the Agreement to its Amended Counterclaim or incorporate it therein by reference.[4] Therefore, the Court may not use the existence or contents of the Agreement to find that Defendant has stated a claim for nondisclosure.[5] Since there are no facts indicating the

---

[4] As is generally the case with counterclaims, Defendant set forth its fraud claim in the same document as its Answer to the FAC. In its Answer, Defendant admits the existence and terms of the Agreement. However, courts do not consider the answer's admissions and denials when considering a motion to dismiss a counterclaim. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 153 F. Supp. 3d 1291, 1319 (W.D. Wash. 2015); *Finato v. Keith Fink & Assocs.*, No. 2:16–CV–06713–RGK–AJW, 2017 WL 3075510, at *2 (C.D. Cal. May 17, 2017).

[5] The Court may also consider the contents of a document even though the plaintiff does not allege the document's contents, if (1) the plaintiff's claim depends on the document; (2) the defendant attaches the document to its motion to dismiss; and (3) the document's authenticity is not disputed. *Knievel*, 393 F.3d at 1076. This mechanism may not be used to consider the Agreement because the first two requirements are not satisfied.

existence of a relationship between the parties (special or otherwise) that would create a duty to disclose, the Court finds that Defendant has failed to allege fraud in the form of nondisclosure. *See Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 619 P.2d 485, 487 (Ariz. Ct. App. 1980) ("special relationship," e.g., a confidential relationship where one relies on the other's trustworthiness, gives rise to a duty to disclose).

Finally, Defendant contends that it has alleged fraud in the form of active concealment. The Court agrees. Unlike simple nondisclosure, active concealment does not require the existence "of a fiduciary, statutory, or other legal duty to disclose." *Wells Fargo Bank*, 38 P.3d at 21. Active concealment is "characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." *Id.* at 35–36 (quoting *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000)). Plaintiff argues that Defendant failed to allege that he took any action to conceal his agreement with Ryan. However, Plaintiff overlooks that his alleged representations may constitute concealment. *Id.* at 36 (quoting William L. Prosser, Handbook of the Law of Torts § 106, at 695 (4th ed. 1971) (active concealment includes "[a]ny words . . . which create a false impression covering up the truth, or which remove an opportunity that might otherwise have led to the discovery of a material fact . . . .")). Plaintiff allegedly misrepresented that Ryan was interested in consulting and was able to provide valuable consulting services. Assuming the truthfulness of these allegations and giving them a liberal construction, they show that Plaintiff performed a "deceptive act" intended to hide information, mislead, or prevent inquiry into a material matter. Specifically, whether Ryan actually intended to perform consulting services was material to Defendant's decision to retain him as a consultant. By allegedly misrepresenting that Ryan was interested in performing such services, it can reasonably be inferred that Plaintiff intended to hide that Ryan would not perform, mislead Defendant into believing that Ryan would perform, or prevent Defendant from inquiring into whether Ryan would perform. This is sufficient to state a claim at this stage.

. . . .

### 2. Economic Loss Rule

Plaintiff argues that the fraud claim is barred by the economic loss rule, which limits "a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Affordable Hous. Ltd. v. Design All., Inc.*, 223 P.3d 664, 667 (Ariz. 2010) (en banc); *see Sullivan v. Pulte Home Corp.*, 306 P.3d 1, 3 (Ariz. 2013). Plaintiff contends that any representations by him were made pursuant to his consulting obligations under the Agreement and that, accordingly, Defendant is precluded from seeking tort remedies for economic loss caused by those representations. Defendant argues that the economic loss rule applies only in products liability and construction defect cases and that Plaintiff's allegedly tortious conduct is unrelated to performance of the Agreement.

As an initial matter, Defendant has not pled any facts concerning the Agreement, nor has Defendant attached the Agreement to its Amended Counterclaim or incorporated it therein by reference. Therefore, it would be improper to dismiss Defendant's claim based on a contractual relationship that is mentioned nowhere in the Amended Counterclaim. *Inst. of Cetacean Research*, 153 F. Supp. 3d at 1319. The Motion will be denied on that ground.

Additionally, even were it proper to consider Defendant's fraud claim in view of the parties' Consulting Agreement, the Court disagrees that the claim is barred by the economic loss rule. "The economic loss doctrine may vary in its application depending on context-specific policy considerations." *Flagstaff Affordable Hous.*, 223 P.3d at 669. Courts should consider the underlying policies of tort and contract law when determining whether the rule applies to a particular case. Where the policy underlying contract law (to uphold contracting parties' expectations) outweighs the policy underlying tort law (to promote the safety of people and property), the economic loss rule bars tort claims. *Id.* Where, on the other hand, tort law preponderates, the economic loss rule should not be applied. *Id.* at 668.

The economic loss rule has been applied to contract-related fraud claims. In *Cook*

*v. Orkin Exterminating Co.*, 258 P.3d 149, 150, 153 (Ariz. Ct. App. 2011), an Arizona appellate court applied the economic loss rule to a fraudulent inducement claim arising out of a service contract to exterminate termites.[6] The plaintiffs alleged they were induced to enter into the contract by the defendant's promises to successfully eradicate the termites and repair new termite damage (although neither promise was in the contract). *Id.* at 150. The defendant was unsuccessful, so the plaintiffs filed suit. *Id.* at 151. After weighing the policies underlying contract and tort law, the court declined to impose tort liability, reasoning that the plaintiffs should be limited to contractual remedies because they were seeking money for the defendant's failure to adequately perform the contract. *Id.* at 153.

In an unpublished case, *Maricopa Investment Team, LLC v. Johnson Valley Partners LP*, No. 1 CA–CV 12–0047, 2012 WL 5894849, at *1–3 (Ariz. Ct. App. Nov. 23, 2012), an Arizona appellate court applied the economic loss rule to a fraudulent inducement claim arising from failure to perform under a settlement agreement. When the defendant failed to pay the plaintiff the sum due under the agreement, the plaintiff filed suit alleging that the settlement agreement was induced by the defendant misrepresenting its ability to pay. *Id.* at *2. The court found no strong policy reason to impose tort liability because nonpayment of the settlement was a risk that was anticipated and bargained for, demonstrated by the contractual remedies available for breach by nonpayment. *Id.* at *2–3.

The District of Arizona refused to apply the economic loss rule to a fraudulent inducement claim in *Jes Solar Co. v. Matinee Energy, Inc.*, CV 12-626 TUC DCB, 2015 WL 10943562, at *1–5 (D. Ariz. Nov. 2, 2015). The parties entered into a series of contracts under which the defendant agreed to pay the plaintiff to construct a power plant. *Id.* at *1–2. The plaintiff advanced hundreds of thousands in costs that were not reimbursed, and the project was never built, so the plaintiff filed suit alleging that the

---

[6] Defendant argues that the economic loss rule applies only in products liability and construction defect cases. *Cook*, which involves application of the rule to a service contract, belies that argument.

defendant was engaged in a fraudulent scheme and intended at the inception of the contracts to not perform. *Id.* at *2. After weighing the relevant policies, the district court determined that tort liability was appropriate because the risk of loss was not bargained for, distinguishing cases such as *Cook*. *Id.* at *3–4. Inducing the plaintiff to enter into the contracts was the means by which the defendant stole the plaintiff's money, so protecting the parties' expectations under the contracts was not a persuasive reason to apply contract law. *Id.* at *5.

Assuming the truthfulness of Defendant's allegations, this case is more analogous to *Jes Solar Co.*, where the risk of injury was not bargained for or allocated. The purpose of the Agreement was for Plaintiff to provide valuable consulting services to Weed, Inc. It is reasonable to infer that Defendant did not anticipate or bargain for the risk that Plaintiff would use Weed, Inc. to satisfy his personal debts, while intending that Weed, Inc. receive nothing in return. Thus, there is no strong policy reason to limit Defendant to its contractual remedies. Cases like *Cook* and *Maricopa Investment Team* are distinguishable because the plaintiffs in those cases bargained for the risks which formed the basis of their fraud claims. That is, the injuries in *Cook* (i.e., the defendant's failure to eradicate the termites) and *Maricopa Investment Team* (i.e., the defendant's failure to make all payments) were easily foreseeable, and thus there was good reason to limit the parties to their contractual remedies. Conversely, Plaintiff's allegedly fraudulent conduct was not a foreseeable risk of the Consulting Agreement. The economic loss rule does not apply in these circumstances. *See Jes Solar Co.*, 2015 WL 10943562, at *4–5.

**IV.  Defendant's Motion to Amend**

On April 2, 2018, Defendant timely sought leave to file a second amended counterclaim, which adds a claim against Plaintiff for breach of contract. Plaintiff does not oppose. Defendant's Motion will be granted.

**IT IS ORDERED:**

1. Defendant Weed, Inc.'s Motion to Dismiss (Doc. 13) is **granted**. Plaintiff William Martin's claim for breach of the covenant of good faith and fair dealing (Count

| | |
|---|---|
| 1 | Three) and claim for conversion (Count Four) are **dismissed with prejudice**. |
| 2 | 2.   Plaintiff William Martin's Motion to Dismiss (Doc. 20) is **granted in part** |
| 3 | **and denied in part**.  The Motion is granted to the extent that Defendant Weed, Inc.'s |
| 4 | claim for fraudulent nondisclosure is **dismissed without prejudice**.  The Motion is |
| 5 | denied to the extent that Defendant has stated claims for fraudulent misrepresentation and |
| 6 | fraudulent concealment. |
| 7 | 3.   Defendant Weed, Inc.'s Motion to Amend (Doc. 33) is **granted**.  Defendant |
| 8 | shall file its Second Amended Counterclaim within **five (5) days** of the filing date of this |
| 9 | Order. |
| 10 | **Dated this 30th day of May, 2018.** |

_____
Honorable Rosemary Márquez
United States District Judge