**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Martin,<br><br>    Plaintiff,<br><br>v.<br><br>Weed Incorporated, et al.,<br><br>    Defendants. | No. CV-18-00027-TUC-RM<br><br>**ORDER** |

Pending before the Court are Cross-Motions for Summary Judgment, both of which are fully briefed. (Docs. 56, 75, 80, 82.) The Court heard oral argument on October 15, 2019, and took the matter under advisement. (Doc. 104.) For the reasons that follow, both Motions will be granted in part and denied in part.

**I.     Factual and Procedural History**

On January 19, 2018, Plaintiff William Martin filed this action against Defendant Weed, Incorporated ("WEED"). (Doc. 1.) Plaintiff alleged that he entered into a contract with WEED, which WEED breached by failing to issue Plaintiff 700,000 shares of WEED stock. (*Id.* at 2–3.)[1] Based on the foregoing allegations, Plaintiff brought four claims: two for breach of contract, one for breach of the covenant of good faith and fair dealing, and one for conversion. (*Id.* at 3–5.)

On March 27, 2018, Plaintiff filed the operative First Amended Complaint, alleging the same four claims against WEED. (Doc. 29 at 4–7.) In addition, Plaintiff added several

---

[1] Record citations refer to the page numbers electronically generated by the Court's filing system, not to the cited documents' original page numbers.

1 defendants: Glenn Martin, President and CEO of WEED; Nicole Breen, Secretary and Treasurer of WEED; Ryan Breen, Vice President and Social Media Officer of WEED; and GEM Management Group, LLC. (*Id.* at 2.) Plaintiff brings a fifth claim against all Defendants for violation of Ariz. Rev. Stat. § 44-1004, alleging that WEED transferred stock shares to the other Defendants for the purpose of defrauding Plaintiff as a creditor. (*Id.* at 7–8.)[2]

On May 31, 2018, WEED filed its operative Second Amended Counterclaim. (Doc. 50.) WEED alleges two counterclaims against Plaintiff: one for fraudulent misrepresentation and concealment, and one for breach of contract. (*Id.* at 6–9.) The counterclaim for breach of contract rests on the allegation that Plaintiff did not perform any services under the parties' contract. (*Id.* at 8–9.) The fraud counterclaim arises from WEED's decision to hire Michael Ryan, a longtime friend of Plaintiff. (*See id.* at 6–7.) WEED alleges that it hired Ryan based on the recommendation of Plaintiff, and that Plaintiff made such recommendation without disclosing that he was indebted to Ryan and intended for WEED to satisfy that debt by issuing stock shares to Ryan. (*Id.* at 7–8.) WEED further alleges that Plaintiff told Ryan that contractual performance would not be required, and that Ryan indeed did not perform. (*Id.* at 8.)

Both Plaintiff and WEED filed Motions to Dismiss. (Docs. 13, 20.) The Court granted WEED's Motion to Dismiss, finding Plaintiff's claims for conversion and breach of the covenant of good faith and fair dealing barred by the statute of limitations. (Doc. 49 at 13–14.) The Court partially granted Plaintiff's Motion to Dismiss, finding that WEED had stated a counterclaim for fraud based on misrepresentation and/or concealment, but not fraudulent nondisclosure. (*Id.* at 14.)

Thus, Plaintiff has three claims pending: two for breach of contract, and one for fraudulent transfer in violation of Ariz. Rev. Stat. § 44-1004. WEED has two counterclaims pending: one for fraud based on misrepresentation and/or concealment, and

---
[2] Plaintiff includes a sixth claim for "injunctive relief" against WEED. (Doc. 29 at 7.) This "claim" is not an independent legal ground for obtaining relief but is itself a form of relief. It is not discussed in this Order.

- 2 -

one for breach of contract. All claims are challenged on summary judgment.

## II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party. *Id.* In evaluating a motion for summary judgment, the court must "draw all reasonable inferences from the evidence" in favor of the non-movant. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002). A reasonable inference is one which is supported by "significant probative evidence" rather than "threadbare conclusory statements." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680–81 (9th Cir. 1985) (internal quotation marks omitted). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor*, 311 F.3d at 1150.

The party moving for summary judgment bears the initial burden of identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and emphasis omitted); *see also* Fed. R. Civ. P. 56(c)(1).

## III. Contract Claims

### A. Background[3]

In October 2014, Plaintiff and WEED entered into a Consulting Agreement for Plaintiff to provide consulting services to WEED. (DSOF ¶ 5.) The Consulting Agreement

---

[3] "DSOF" refers to Defendants' Statement of Facts. (Doc. 57.) "PSOF" refers to Plaintiff's Statement of Facts. (Doc. 76.) All quotations are provided without corrections and without signaling errors with "[sic]."

provides that Plaintiff would be compensated with 1.2 million shares of WEED stock, to be issued in two installments. (DSOF ¶ 6; Doc. 76-1 at 2, 9.) WEED issued the first installment of 500,000 shares to Plaintiff. (DSOF ¶ 6; Doc. 81-4 at 8.) Per the Consulting Agreement, the second installment of 700,000 shares would "become, due and payable . . . within 30 days on April 1st. 2015 . . . ." (Doc. 76-1 at 9.)

On April 1, 2015, Plaintiff exchanged emails with Glenn Martin, who signed the Consulting Agreement on behalf of WEED. (Doc. 57-2 at 74–77.) In the first email, Plaintiff sets forth a proposed "50/50 joint venture" and concludes: "I'm happy to work with you, but not for you." (*Id.* at 77.) The response email from Glenn Martin states, among other things:

> So far now we will go our separate ways in business. We will always stay friends I PRAY !! You said we were even with the 500k shares and thats good. If I had to put out another 700k for only getting 1/2 of $27,500 would of been upsetting.

(*Id.* at 74.) WEED never issued Plaintiff the second installment of 700,000 shares. (*See* DSOF ¶ 8.)

Plaintiff brings two claims for breach of contract based on WEED's refusal to issue the remaining 700,000 shares. WEED denies these claims, contending that the Consulting Agreement was terminated before the shares became payable. WEED brings a counterclaim for breach of contract, asserting that Plaintiff breached by never performing any consulting services. Plaintiff denies this claim, arguing that the evidence shows both that he performed and that WEED is the breaching party.

**B.     The Consulting Agreement**

The Consulting Agreement is governed by Arizona law. (Doc. 76-1 at 6.) Under Arizona law, contracts are interpreted so as to "ascertain and enforce the parties' intent." *ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. App. 2010). To determine what the parties intended, the Court must "first consider the plain meaning of the words in the context of the contract as a whole." *Grosvenor Holdings, L.C. v. Figueroa*, 218 P.3d 1045, 1050 (Ariz. App. 2009). If the contract is unambiguous, "its interpretation is a question of law for the court." *Callaway*, 246 P.3d at 942.

The Compensation Provision provides in relevant part:

> The balance of 700,000 (seven hundred thousand) shares due on contract shall become, due and payable as described above, within 30 days on April 1st. 2015 and shall be issued within 30 days of its due date.

(Doc. 76-1 at 9.) The parties agree on the meaning of this provision: On April 1, 2015, the 700,000 shares would become due to Plaintiff as compensation, and WEED would be required to issue the shares to Plaintiff no later than May 1, 2015 (thirty days after the shares became due). (Doc. 29, ¶ 10; Doc. 81-3 at 28.)[4]

Therefore, if the Consulting Agreement was not terminated before April 1, 2015, WEED breached by not issuing the shares to Plaintiff. The Consulting Agreement's termination provision states:

> The Agreement will terminate on September 30th 2015. The Company or the Consultant may terminate this Agreement at any earlier time, with or without cause, in which event the Company shall only be responsible for that portion of the Compensation due and payable up to and including the date of such termination by the Consultant. Both parties, if able to terminate this Agreement in accordance with this Section, may effectuate the termination by written notice to the other party.

(Doc. 76-1 at 5.)

Plaintiff argues that, under the Consulting Agreement's plain language, termination releases the Company from its duty to compensate the Consultant *only if* the termination is "by the Consultant." In other words, if termination is "by the Company," the Company still must pay all compensation. WEED responds that it would prevail even were Plaintiff correct, because the evidence shows the parties mutually terminated the Consulting Agreement before April 1, 2015. In reply, Plaintiff argues that "mutual termination" has the same effect as termination "by the Company" because it is "by both parties," not "by

---

[4] Plaintiff alleged in his Verified Complaint that the shares were "to be issued by May 31, 2015." (*See* Doc. 1, ¶ 7.) His position changed in the unverified First Amended Complaint, where he alleges that the shares were "to be issued within 30 days of its due date of April 1, 2015." (Doc. 29, ¶ 10.) Even if superseded, a verified pleading is "akin to a sworn declaration," and thus negative consequences may flow to a party who contradicts his own inoperative, verified pleading. *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 n.2 (9th Cir. 2007). Here, nothing indicates that the amended allegation was made in bad faith, as both parties agree that it sets forth the correct interpretation. (*See* Doc. 44, ¶ 10.)

the Consultant."

The Court partially agrees with Plaintiff. The second sentence must be interpreted to mean that *only* termination "by the Consultant" absolves the Company of its duty to compensate the Consultant. WEED offers no alternative interpretation that gives meaning to "by the Consultant," nor is the Court able to discern one. *See First Credit Union v. Courtney*, 309 P.3d 929, 934–35 (Ariz. App. 2013) (stating that contracts must be construed so that no portion is rendered meaningless).[5] However, the Court disagrees that termination "by the Consultant" does not include mutual termination. By definition, mutual termination would be both "by the Company" *and* "by the Consultant." In the case of either unilateral or mutual termination, the Consultant would be deciding to stop performance and walk away from the contract. It would be absurd if the Consultant forfeited compensation in one situation but not the other. *See Roe v. Austin*, 433 P.3d 569, 575 (Ariz. App. 2018) ("[C]ourts must avoid an interpretation of a contract that leads to an absurd result.").

Moving to the third sentence, Plaintiff argues that termination was valid only if done in writing. The Court agrees with Plaintiff's interpretation. The use of "may" does not mean that a party "may" choose to terminate through written notice or "may" choose to terminate through some other means (e.g., orally). Adopting that interpretation would render the entire sentence superfluous. *See Courtney*, 309 P.3d at 934–35. Rather, the sentence means that a party "may" choose to terminate through written notice or "may" choose to not terminate. *See Mullenaux v. Graham County*, 82 P.3d 362, 366 (Ariz. App. 2004) (holding that use of "may" in statutory grievance procedure means an employee

---

[5] During oral argument, defense counsel stated that it "doesn't make sense" that the Company should have to pay all compensation after it unilaterally terminates. But there is logic underlying this provision. The Consultant is agreeing to be available for a predetermined length of time and may pass over other opportunities to meet that obligation; if the Company unilaterally terminates the contract, then, it makes sense that the Consultant, who was ready to fulfill his obligations, should be compensated. On the other hand, if the Consultant desires to terminate the contract, it makes sense that he should receive no further compensation. Furthermore, the covenant of good faith and fair dealing, which is implied in every contract, would preclude the Consultant from engaging in bad-faith behavior designed to cause the Company to unilaterally terminate the contract. *See Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. App. 2002).

- 6 -

"may" comply with the grievance procedure or "may" abandon the grievance); 11 *Williston on Contracts* § 30.10 (4th ed. 2018) (stating that "whether a permissive or mandatory construction applies to ['may'] ultimately depends on the apparent intention of the parties as gathered from its context, considering the whole instrument in which the word was used").

The Court's interpretation may be summarized as follows: On April 1, 2015, Plaintiff would become entitled to the 700,000 shares as compensation. Once the 700,000 shares became due as compensation, WEED would be required to issue the shares to Plaintiff by May 1, 2015. Either party could terminate the Consulting Agreement at any time, but only by sending written notice to the other party. Termination by Plaintiff (either unilateral or mutual) would relieve WEED of its obligation to pay compensation that had not yet become due. Unilateral termination by WEED would not lift that obligation; that is, WEED would still owe Plaintiff whatever compensation became due after the termination date.

**C.     Discussion**

    **1.     Plaintiff's Claims**

WEED argues that it is entitled to summary judgment on Plaintiff's breach-of-contract claims because the Consulting Agreement was mutually terminated in March 2015, before the 700,000 shares became due. WEED points to the April 1, 2015 emails between Plaintiff and Glenn Martin as evidence that termination occurred at some point in March 2015. In response, Plaintiff asserts that he, not WEED, is entitled to summary judgment. He disputes that termination occurred in March 2015, pointing out that there is no written notice of termination dated prior to April 1. Moreover, Plaintiff argues, he is entitled to the shares because he did not terminate the Consulting Agreement, WEED did.[6]

---

[6] In its motion, WEED states several times that "WEED" terminated the Consulting Agreement. (Doc. 56 at 2, 4, 5.) As explained above, unilateral termination by WEED would not absolve it of its duty to issue the 700,000 shares. It appears, however, that WEED's statements, though careless, are not admissions. WEED's statement of facts says merely that "the Consulting Agreement was terminated before Plaintiff was entitled to the additional 700,000 shares." (DSOF ¶ 8.) The evidence supporting that statement includes Glenn Martin's affidavit, which similarly states that "the Consulting Agreement was terminated." (Doc. 57-1, ¶ 17.) Additionally, in responding to Plaintiff's request for

- 7 -

The parties' requests for summary judgment will be denied. To be sure, the Consulting Agreement provides a specific method for early termination: "written notice to the other party." The record establishes that the April 1, 2015 emails are the earliest possible "written notice" of termination. April 1, 2015 is also the date on which the 700,000 shares became due as compensation. Because the Consulting Agreement's plain language required WEED to pay all compensation due "up to and including the date of . . . termination," if the writing requirement is valid, WEED breached by not issuing the shares to Plaintiff. (Doc. 76-1 at 5.)

However, there is a genuine dispute whether the parties waived the writing requirement through their conduct. *See Russo v. Barger*, 366 P.3d 577, 580 (Ariz. App. 2016) (stating the general rule that "one party may waive any provision of a contract made for his benefit"). Glenn Martin testified that the parties orally agreed to terminate the Consulting Agreement prior to April 1, 2015. (Doc. 81-3 at 28–29.) He followed up with an email to Plaintiff on April 1, stating: "You said we were even with the 500k shares and that's good. If I had to put out another 700k for only getting 1/2 of $27,500 would have been upsetting." (Doc. 57-2 at 74.) This language suggests the existence of a prior understanding that Plaintiff would receive no more shares; significantly, Plaintiff did not object to this language in his response a few days later. (*Id.*) In fact, it appears from the record that Plaintiff waited more than two years to raise an objection. (*See id.* at 87 (demand letter to Glenn Martin dated December 29, 2017).)

Under these circumstances, a reasonable jury could find that the parties waived the writing requirement and mutually terminated the Consulting Agreement prior to April 1, 2015. *See Thermo-Kinetic Corp. v. Allen*, 493 P.2d 508, 512 (Ariz. App. 1972) (stating that "the conduct of the parties may constitute a waiver of the requirement of written notice of termination"); *Gruber v. Castleberry*, 533 P.2d 82, 83–84 (Ariz. App. 1975) (stating that where a "lease stipulates written notice, a waiver of the requirement may be implied from the conduct of the parties" and that "[c]learly, waiver is a question of fact to be determined

a preliminary injunction, WEED submitted an earlier affidavit from Glenn Martin stating that "the parties terminated the Consulting Agreement by agreement." (Doc. 9-1, ¶ 14.)

according to the intention of the parties as disclosed by the facts"); *Chaney Bldg. Co. v. Sunnyside Sch. Dist. No. 12*, 709 P.2d 904, 907 (Ariz. App. 1985) (stating that "waiver may be inferred from conduct and is, therefore, a question of fact to be determined by the trier of fact"). Therefore, summary judgment will be denied.

### 2. WEED's Counterclaim

WEED alleges in its counterclaim for breach of contract that Plaintiff "failed to provide any consulting services to WEED." (Doc. 50 at 9.) Plaintiff seeks summary judgment, arguing that the evidence shows he provided at least some consulting services, both before and after April 1, 2015. In response, WEED shifts its position, arguing that Plaintiff breached by not "perform[ing] consulting services for the full term of the contract." (Doc. 80 at 15.)

Summary judgment will be granted. WEED's counterclaim, as pleaded, alleges that Plaintiff performed no consulting services *whatsoever*. Thus, WEED's claim necessarily fails if Plaintiff performed at least some consulting services. WEED expressly admits this to be the case: "Plaintiff provided some consulting services to WEED, Inc. before the Consulting Agreement was terminated." (Doc. 81 at 3.) WEED did not plead that Plaintiff breached by failing to perform for the entire contract period. Therefore, WEED may not rely on that theory to save its counterclaim. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990))).

## IV. Fraudulent Transfer

Plaintiff brings a claim under Ariz. Rev. Stat. § 44-1004, alleging that WEED transferred shares of stock to Nicole and Ryan Breen with intent to hinder, delay, or defraud Plaintiff as a creditor of WEED. WEED asserts that it is entitled to summary judgment.

### A. Background

The Consulting Agreement does not contain any anti-dilution provision. (DSOF ¶ 14.) WEED's prospectus states the following as a "risk factor" of investment: "We will

need additional capital in the near future. Any equity financing will result in dilution to our then-existing stockholders." (DSOF ¶ 15.)

Nicole Breen serves as Secretary and Treasurer of WEED and is periodically compensated with WEED stock for her services. (DSOF ¶¶ 17–18, 21.) As of December 31, 2016, Nicole Breen owned 19,947,520 shares of WEED stock. (DSOF ¶ 20.) Ryan Breen serves as Vice President and Social Media Officer of WEED and is periodically compensated with WEED stock for his services. (DSOF ¶¶ 22–23, 26.) As of June 30, 2017, Ryan Breen owned 5,047,766 shares of WEED stock. (DSOF ¶ 25.)[7] All compensation was approved by WEED's Board of Directors and disclosed in WEED's S-1 Registration. (DSOF ¶¶ 19, 24.)

**B. Discussion**

Summary judgment will be granted in favor of WEED. Under Ariz. Rev. Stat. § 44-1004(A), a transfer is fraudulent if done (1) "[w]ith actual intent to hinder, delay or defraud any creditor" or (2) "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation," and the debtor either engages in business without sufficient assets or incurs debts beyond his ability to pay. WEED presents evidence that both Nicole and Ryan Breen were employed by WEED, that they (like Plaintiff) were compensated for their services with WEED stock, and that such compensation was approved by WEED's directors and disclosed in its S-1 Registration. (*See* Doc. 57-1 at 5–6.) Furthermore, investors were warned that dilution was forthcoming, and Glenn Martin denies that the shares were issued with intent to defraud Plaintiff. (*Id.* at 6.) This evidence is sufficient to shift the burden to Plaintiff to show a triable issue. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Plaintiff has not carried his burden to show a genuine dispute that WEED issued the shares with intent to hinder, delay, or defraud its creditors. *See Mendiola-Martinez v.*

---

[7] In his statement of facts, Plaintiff "admits" that Nicole and Ryan Breen "received stock *supposedly* in exchange for [their] services." (PSOF ¶¶ 18, 23 (emphasis added).) If Plaintiff disputed these facts, he should have cited to a "specific admissible portion of the record supporting" the dispute. LRCiv 56.1(b). He did not do so. These facts are deemed admitted without qualification.

*Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (stating that summary judgment is appropriate where plaintiff fails to support an element of her claims with evidence). In opposing summary judgment, Plaintiff relies solely on his deposition. (PSOF ¶ 29.) He cites to a single, brief exchange:

> Q: Tell me every fact upon which you rely for your allegation that when the shares were issued, as alleged by you in the first amended complaint, it was done with the intent to hinder, delay or defraud you.
> A: Aside from the fact of dilution, I can't say anything specific.

(Doc. 81-4 at 35.) This speculative testimony does not show a dispute of material fact. Plaintiff acknowledged that the issuance of shares will always result in the dilution of all preexisting shareholders' ownership interests, and he was unable to explain why the issuance of shares in this case shows intent to hinder, delay, or defraud. (*Id.* at 34–35.) In short, Plaintiff offers only speculation that WEED had the requisite intent. No reasonable jury could find from such testimony that WEED issued shares to Nicole and Ryan Breen with intent to hinder, delay, or defraud Plaintiff or any other creditor. *Gerow v. Covill*, 960 P.2d 55, 63 (Ariz. App. 1998) (stating that intent under § 44-1004(A)(1) "may be shown by direct proof or by circumstantial evidence from which actual intent may be *reasonably* inferred" (emphasis added) (citation omitted)); *see Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982) ("Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence." (citations omitted)).

Next, Plaintiff has failed to identify any evidence that WEED did not receive reasonably equivalent value for the shares. His briefing is devoid of any argument that WEED did not receive reasonably equivalent value, and he has acknowledged that the Breens received stock in exchange for their services. Therefore, summary judgment will also be granted on this portion of Plaintiff's claim.

**V.     Fraudulent Misrepresentation and Concealment**

WEED brings a counterclaim for fraudulent misrepresentation and concealment in connection with Plaintiff's alleged recommendation to hire Michael Ryan as a consultant. Plaintiff seeks summary judgment.

### A. Background

WEED's claim of fraudulent misrepresentation and concealment are based on the following allegations: Plaintiff represented that Ryan was interested in becoming a consultant for WEED and had the skills and abilities to provide valuable consulting services to WEED. (Doc. 50 at 6.) Plaintiff encouraged and persuaded WEED to hire Ryan as a consultant, which WEED did. (*Id.* at 6–7.) At the time Plaintiff made the recommendation, WEED did not know that Plaintiff was indebted to Ryan, that Plaintiff had told Ryan that the shares issued by WEED as compensation would satisfy Plaintiff's debt, that Plaintiff had told Ryan that no consulting services would need to be performed, and that Ryan had no intention of performing consulting services. (*Id.* at 7–8.) Ryan received WEED stock as compensation but performed no consulting services. (*Id.* at 8.)

### B. Discussion

Summary judgment will be granted in favor of Plaintiff. There are clear disputes concerning whether Plaintiff encouraged WEED to hire Ryan and whether Ryan performed any consulting services once hired. Those disputes are immaterial, however, because WEED points to no admissible evidence from which a reasonable jury could infer that Plaintiff intended to deceive Glenn Martin or WEED. *See McAlister v. Citibank (Ariz.)*, 829 P.2d 1253, 1260 (Ariz. App. 1992) ("The party alleging fraud bears the burden of establishing the intent to deceive." (citation omitted)).

WEED relies on the following facts to establish that the recommendation was made with fraudulent intent: (1) Plaintiff told Chris Richardson (a) that Plaintiff was indebted to Ryan, and (b) that Plaintiff told Ryan that he would receive stock shares from WEED to satisfy the debt, and that Ryan need not perform any consulting services; and (2) Ryan performed no consulting services. (*See* Doc. 80 at 14.) Glenn Martin learned from Richardson that Plaintiff had made the foregoing statements. (*See* Doc. 81 ¶¶ 30, 34.)

WEED correctly points out that Plaintiff's alleged statements to Ryan and Richardson are non-hearsay party-opponent statements. Fed. R. Evid. 801(d)(2). However, Richardson's statements to Glenn Martin are inadmissible hearsay because they

are out-of-court statements offered for the truth of the matters asserted. Fed. R. Evid. 801(c). Thus, unless WEED can establish an exception to the hearsay rule, Richardson's statements—and thus Plaintiff's statements—are inadmissible and may not be considered. *See Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 948 (9th Cir. 2012) (stating that federal courts may consider only facts that would be admissible in evidence when ruling on summary judgment motions); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778–79 (9th Cir. 2002), *as amended* (holding district court properly refused to consider inadmissible hearsay when ruling on summary judgment motion).

During oral argument, WEED argued that Richardson's statements to Glenn Martin are admissible under Federal Rule of Evidence 801(d)(1)(A), because the statements are inconsistent with Richardson's deposition testimony that he made no such statements. (Doc. 81-5 at 9.) Under Rule 801(d)(1)(A), a prior statement is admissible non-hearsay if, among other things, the statement "was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." This rule does not allow, as WEED contends, the admission of an out-of-court statement if the statement conflicts with prior sworn testimony. The rule requires that the out-of-court statement itself be made under penalty of perjury. There is no indication that Richardson's statements to Glenn Martin were made under penalty of perjury.

Therefore, Richardson's statements are hearsay, and the entire combined statement is inadmissible. *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1045 (9th Cir. 1999) (stating that layered hearsay is admissible only if "each layer of hearsay . . . satisf[ies] an exception to the hearsay rule"). WEED does not argue that Richardson's alleged statements would be admissible at trial in some other form. *See JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony."). Given that Glenn Martin cannot testify to Richardson's hearsay statements, and that Richardson denied making such statements, it appears they would not be

admissible in any form at trial.

Without the inadmissible evidence, WEED's claim that Plaintiff's recommendation was made with fraudulent intent rests on a single (disputed) fact: Ryan performed no consulting services after being hired. Plaintiff is correct that, as a matter of law, this fact alone cannot support a finding that Plaintiff intended to deceive WEED. *McAlister*, 829 P.2d at 1260 (explaining that "an intent not to perform or to deceive must be established independent of a showing of the defendant's failure to perform" (citation omitted)). Therefore, Plaintiff has met his initial burden by showing that WEED "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). WEED, in turn, has failed to meet its responsive burden "to produce enough evidence to create a genuine issue of material fact." *Id.* at 1103. Plaintiff is consequently entitled to summary judgment. *See id.*

**IT IS ORDERED:**

1. Defendants' Motion for Partial Summary Judgment (Doc. 56) is **granted in part and denied in part**, and Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 75) is **granted in part and denied in part**, as follows:

   a. Summary judgment is **denied** on Plaintiff's claims for breach of contract (Count One and Count Two of the First Amended Complaint (Doc. 29)).

   b. Summary judgment is **granted** in favor of Defendants on Plaintiff's claim for fraudulent transfer in violation of Ariz. Rev. Stat. § 44-1004 (Count Six of the First Amended Complaint (Doc. 29)). Defendants Glenn Martin, Nicole Breen, Ryan Breen, and GEM Management Group, LLC are **dismissed** from this action.

   c. Summary judgment is **granted** in favor of Plaintiff on Defendant Weed, Incorporated's counterclaims for fraudulent misrepresentation and concealment and breach of contract (Count One and Count Two, respectively, of the Second Amended Counterclaim (Doc. 50)).

2. The parties shall file a Joint Proposed Pretrial Order within **30 days** of the date of this Order. (*See* Doc. 27 and form attached thereto.)

Dated this 20th day of November, 2019.

_____
Honorable Rosemary Márquez
United States District Judge